Welcome everyone to the Fourth Circuit today. Good to have you all here. We're looking forward to the arguments. Judge Agee and I are particularly honored and pleased to be with Judge Norton, David Norton, our friend Judge Norton of South Carolina, and welcome him to the Fourth Circuit. Thank you, sir. The first case is Goodman v. Barber. Miss Torrey? Mr. Torrey? Mr. Fury, I'm sorry. May it please the court. My name is Torren Fury and I represent the defendant appellants, Deputy Barber, the Sampson County Sheriff's Office, and also, I'll how casually, the bondholder. At this time I would like to confirm my reservation of five minutes of rebuttal time. This case arises out of initially a traffic stop of William Goodman, where he had stopped, Deputy Barber had stopped Mr. Goodman as a result of having no insurance on the vehicle that he was driving. As he had stopped Mr. Goodman, a series of friends and family members of Mr. Goodman, including the plaintiff, came and, as the district court found, surrounded and outnumbered Deputy Barber while he was trying to deal with Mr. Goodman. That during the exchange with the family and friends, there was an exchange between Mr. Beckwith, the stepfather, and the plaintiff, Miss Goodman, that while Deputy Barber was trying to get control of the situation, Mr. Beckwith, at that point, began to intervene with his attempt to arrest Miss Goodman. At that point, tried to pull her away. During that period of time, Deputy Barber had some difficulty getting Miss Goodman under control. That at some point, as he was getting her under control, she fell to the ground and ultimately did handcuff her at some point after that. Of important note with regard to the district court's findings and holdings was the fact that there was probable cause to arrest Miss Goodman for the resist, delay, and obstruction, that the illegal arrest claim, a summary judgment was granted, false imprisonment claim, it was granted, and that there was no malicious prosecution claim for the RDO. So under those particular holdings and findings, Deputy Barber had the right to arrest Miss Goodman under the facts of this case. Questions whether he had a right to beat her up after he handcuffed her, wasn't it? Well, and Your Honor, I think as we stand here today, it is the appellant's issue under the Waterman case as to the excessive force issue as to any force that was applied prior to getting her under control versus the allegations which I understand on behalf of the appellants that you have to take the evidence in the light most favorable to Miss Goodman. You're willing to accept that? Their purposes, for purposes, You accept their version of the facts? For purposes of the appeal, yes, obviously. The appeal, you have to accept their facts, which is that he abused or used excessive force after the handcuffs were put on her. Well, and I think the important thing and what we're specifically asking for the court at this point is summary judgment. You want immunity. You want immunity, right? Qualified immunity. Yes, Your Honor. And you have to accept his version of the facts? Correct. And you're willing to do that? Yes, Your Honor. No dispute of this is a fact. You don't dispute any fact that are material here? For purposes of the, Do you acknowledge that your client used excessive force post-handcuffing? Well, what we are asking the court at this point, Your Honor, is, Can you answer that yes or no? At this point, as far as the limited, This is a qualified immunity issue on appeal. That's the question. Yes. And, So, is the answer to Judge King's question, yes, you accept the facts or no, you don't? We have to accept the facts. Okay. The answer is yes. Yes, we have to accept the facts. You accept the facts? Okay. Yes. We don't have any choice. So, what have you got left? All right. To get immunity? For purposes of this, I don't think there's any question. In fact, in the plaintiff's own brief, She admits that the gravamen of the complaint is not anything prior to her getting handcuffed. And let me explain why that is important in this particular case, And why the court should have granted at a minimum partial summary judgment As to the force applied prior to the handcuffing. Now, did you raise that segregation by application of the issues Before and after the arrest in your brief? It is in the brief, Your Honor. We cited the Waterman case. We cited that in the Waterman case, And specifically, I believe, in the reply brief. That's not what I'm asking about. Because if it's not in the opening brief, I don't think you can bring it up in the reply brief. Tell me if you disagree with that, Or if you can cite me something in your blue brief That says you've raised this issue. We don't generally let parties raise an issue for the first time in a reply brief. It's not on the table of authority. Well, I think in this particular instance, We asked for summary judgment in toto. And I think at this point, The court is fully qualified to grant summary judgment With regard to any force that was applied Prior to the handcuffing in this particular case. That wouldn't really help you. I mean, what you really need is a summary, Is a qualified immunity for everything. It's what you want. You're going to have to go to trial on what happened. If you lose here, you're going to have to go to trial, I assume, On what happened post-handcuffing. That's the issue. I mean, your client is in a sympathetic situation here with us. There's no question about it. I mean, he was surrounded. And you've got a good argument that what he was doing, At least until he handcuffed her, was reasonable. But the law's pretty clear, I think. Unless you're arguing the law's not clear, But what you can do post-restraint, The law's pretty clear. I thought that an officer can't beat up somebody After they restrained them. Well, and I think the important thing here is, With regard to the facts And with regard to the specific injuries in this particular case, The plaintiff, in two separate instances in the record, Specifically stated that her finger was broken Prior to being secure. That is on the record at page 135, Which is in her affidavit. And on the record in her deposition at page 172, That under both circumstances, Her finger was broken beforehand. Correct. That probably being that she's not entitled to recover for that. Correct. That's right. What happened afterward is what she'd be, If you don't win here, Is what she'd be entitled to recover for. What happened after she was restrained. If you had to break her finger to get her restrained, You'd probably be all right on that. But you can only, You know, The limited avenues of appeal From these qualified immunity rulings. Well, and I think the point is, at this point, The district court didn't do that. And specifically, at a minimum, We're asking that this court, The district court didn't do what exactly? The district court, We're asking that the court, at a minimum, Grant summary judgment as to any injuries Related to the broken finger And any medical expenses related to the broken finger Under the facts of this case. So you're saying you're entitled to a partial appeal? Well, at least a partial summary judgment. Can we do that under the Forsyth v. Mitchell And its progeny? Well, at this point, I don't think there's anything, I don't have any reason, There isn't any reason why this court can't say That any injuries under the facts, The facts are clear. The broken finger occurred prior to her being secure. Did you raise before Judge Fox? I mean, it's not in the opening brief. And so, Judge, did you argue that before Judge Fox? If the answer to that is no, I don't see how you can argue it here. Well, at this point... You've got to give the district judge an argument. Well, and I understand, And I think that that's something that we have raised In more than one instance in this particular case. I also think that in this case... Can you give Judge Norton and the panel a site In the appendix that we can look at That proves that that indeed happened? The briefs are not in the appendix In this particular instance. The briefs in the lower court. Correct. They're in the record of the lower court. Can you tell us where they are in the record of the lower court? I mean, there's got to be a docket sheet or something That would show where it is. I'm not sure that helps you. Or how it helps you right now. Well, I think in that instance... If you think it does, you can certainly argue it. I think it helps you in the instance, In this particular instance, That's the majority of the plaintiff's medical expenses In this particular case. Are you admitting, acknowledging that you're not entitled To qualified immunity for what happened After the handcuffs were placed on the plaintiff? Well, I think given the existing case law That exists out there, I think it's reasonably hard to argue. Taking the plaintiff's facts is true. That after the handcuffs... In that event, then, do we have any jurisdiction here? Or is it just a matter of affirmance? Well, no. I think, again, it's what I had discussed before, That in this instance, I think that There is no ruling in the district court. Well, then you're saying you're taking a partial appeal. You're taking a... You want to piecemeal a qualified immunity appeal. You want to appeal the part... Part of the handcuffing. But you're admitting that you don't have a claim For what happened... A good qualified immunity claim For what happened post-handcuffing. And I don't think that given the case law that... Even though you didn't bifurcate it for Judge Fox Or earlier for us. Well, and I think if you read the plaintiff's own brief, She's already admitted at this point That the part of her complaint that she's complaining about Is the post-handcuffing. Not the pre-handcuffing. Which is the part you want qualified. To get your client out of this, That's the part you need relief on. I understand. I mean, in order for you to get your client out of this thing In toto, which is what you want, That's what you have to deal with, I think.  But if you find... While you're listening to opposing counsel's argument That there is a place in the record that you can cite us to Where you raise this issue of bifurcating The summary judgment in the district court Before and after the arrest, Then you can tell us when we come back up for rebuttal. Okay. Well... And it would be our position to this court That in this particular instance, If the broken finger in any of the conduct That occurred prior to that time Is taken out of this case, There isn't a lot... But you ought to present that first to Judge Fox. I mean, you may well... All we're able to talk about here Is whether your client's entitled to qualified immunity. I understand. I mean, you may well go to trial here and win this case. I mean, your client's in a sympathetic position. He's surrounded by multiple people Who are hostile and all that stuff. But we're not in a position... We can't deal with that. That's the question for the jury down here in eastern North Carolina. Well, and I understand with regard to the conduct after. And again, I think the conduct before In this particular instance, Again, there isn't much left of this case. If you remove the injury and the medical expenses From this case. If you were to lose here, Is this case ready to go to trial? Or will there be more discovery? I do not know, Your Honor. I'm reasonably certain that discovery would have been closed Before the summary judgment would have been Allowed to proceed. So at this point, I believe that it would be ready to proceed. Obviously, if it were remanded, Whatever scheduling that the district court had, Obviously, my experience has been that at times That can be several months out. But I think at this point, The discovery that's going to occur in this case Has likely been fairly complete. Obviously, there may be some discussion with witnesses, etc. But not formal discovery under the district court. Obviously, with regard to the state law claims, I think that the same analysis applies With regard to public officers' immunity. I think the important thing there is I think the standard's a little bit higher, But I think we would ask the court With regard to the same dichotomy, Which is anything before the handcuffs, Summary judgment should be granted, And that Judge Fox should have done that In this particular instance. You don't think he was asked to do that? Well, in this instance, I think the fact that He's asked to give summary judgment on the entire part Doesn't prevent him from making a ruling Saying that under the Waterman analysis... We have a saying in South Carolina It's called the Lefty Grove Corollary. It's that if you don't throw it, we can't hit it. All right? Which means he didn't throw it, So how could Judge Fox hit it? Well, then again, I think in this instance The Waterman case exists out there To allow that dichotomy. I see my time is almost... Or actually is up, so... Unless there are any other questions. That's fine, Mr. Murray. You've saved five minutes. Yeah, I may or may not need that. You get another crack at it here. Let's see what Mr... How Mr. Key can help us out. Good morning. Good to have you here, sir. Thank you, Judge. As I sat there and listened to Mr. Furry's argument, One of the things that I noticed Was that a lot of this discussion Back and forth between the judges and Mr. Furry Was regarding the facts of this case. And as I read the appellate's brief, Their brief was mostly about the facts of this case. As I read their response brief, It was about the facts of this case. About their version of the facts. About their version of the facts of the case, Judge. As I read, the court requested That we file supplemental briefs in this case With regards to jurisdiction. As I read their supplemental brief, They talked about the facts. Judge King, you made a very, very important point. You said that, you know, Do we really have jurisdiction over this case? Whether it's a purely legal issue Or whether it's mostly a factual issue. I think just by the discussion that occurred here today, Just by the briefs, just by the supplemental briefs, It proves the point that it's really a factual dispute That occurred in this case. And that this court should dismiss this action And find that you do not have jurisdiction over it. And, you know, as you indicated... At least for whatever happened after the arrest, That you must accept the facts that you have fled. And so, having done that, It would seem like we have jurisdiction, But there wouldn't be a lot of heavy lifting To decide it after that. That's right, Judge. I think that as he stood here today, He indicated that he didn't have any dispute After Judge King asked him several times. And I think you had to clarify it. But during the course of the briefs, Prior to today, They wanted us to accept their briefs, their facts. Let me ask you this. Not what you plead, Or not what you say the facts are, But what does the record show, the discovery show, Happen to your client after she was handcuffed? Judge, the facts show that after my client was handcuffed, That the officer mauled her head into the ground. Mauled her head? Her head and her face into the ground. That we have photographs, which I brought here today, To show the damage that she sustained As a result of him mauling her head into the ground. All around her mouth, The left side of her face, Was injured. It was red, and it was bruised. And we have the photographs that we submitted To the district court with regard to those. Well, that's the damages part. But with the facts, what happened? You said he mauled her head into the ground. What else? He hit her in the back. He hit her after she was handcuffed? After she was handcuffed. After she was handcuffed on both hands? On both hands, Judge. Okay, because there was a partial handcuffing at one point. Yes, sir. I'm talking about the full handcuffing now. After the full handcuffing. All right. He hit her, and he mauled her head. Anything else? He hit her. He mauled her head into the ground. And there was something else, Judge. But the most significant damages Were that she had some damages on her back where he hit her. Some bruises on her back. The finger was broken prior to her being on the ground, right? That when he threw her on the ground is when it occurred. Now, I think the facts prior to him handcuffing her Are relevant in front of a jury, Judge. I think that those facts – I noticed that, Judge King, you said something about He was surrounded by some individuals, Some members of my client's family members. He wasn't. Our facts are that he was not surrounded. So there's a dispute about that? Absolutely. Okay. There's a dispute about whether he was surrounded by those. In fact, we've been – Typically, they have cameras on their cars. And we haven't gotten a camera of what the incident occurred. The lights were activated, Which means that the camera on the police car was running. That would show that the car was not surrounded by her family members. But we don't have that. No one has been able to prove it to us. You say there's more discovery to be done now? Well, I think – If this thing goes back, can you go to trial next week? I'm ready to go tomorrow. Well, so then you don't need any more discovery. I don't. So you are not complaining about this camera? I'm not complaining about that, Judge. I think we have enough witnesses who will come and testify, Some objective witnesses that will testify, That the family did not surround the officer. Well, as I understand the opposing counsel's argument, He says, okay, even if I lose today on qualified immunity For whatever happened after your client was arrested, I get to bifurcate this So that there's a qualified immunity segment after arrest And a segment before the arrest. So I wanted to ask you the same things we ask opposing counsel. Is that issue before us today? Was it raised in the district court? Judge, in reading my recollection of the briefs, The summary judgment briefs, It was not raised in the district court by the appellants in this case. It was raised here before the reply brief? It was not raised in the reply brief. My recollection of it, and I've read it several times, I don't recall any indication of bifurcation being brought up.  Right, it is new. That's your position? That's correct, Judge. That's correct. And so we're actually ready, As soon as I can get those subpoenas out, And get the witnesses in court, We're ready to proceed with the trial. This case has been going on since 2008, And we're ready to proceed. So it's your position that we ought to dismiss it for lack of jurisdiction, Or we ought to affirm it? Judge, I think that you can do either one of them. Either way you'd win, but which one? I'm asking you as a matter of procedure. Get your advice. That's a good choice. From your side of the table, Which one do you say is the proper way to go? Judge, I think that you should dismiss the action, And I think you should dismiss it, Because there was a case before this court in 2010-2011, Where there was somewhat a very similar factual situation, Where this court dismissed it for lack of jurisdiction. The Supreme Court's been pretty clear that If it's a factual dispute of qualified immunity, We do not have jurisdiction. Right. Absolutely, Judge. And that's why I would ask you to dismiss the action. Yeah. When they created this qualified immunity appeals thing, It was under the collateral order doctrine. And they said you can get that, You can take a qualified immunity appeal from the denial. An officer can appeal the denial of qualified immunity When the facts aren't disputed. So that's the key to it, the jurisdictional hook. But he said, at one point here, That he doesn't contest the facts post-handcuff. And I'm happy to hear that, Judge. I'm happy to hear that they don't dispute those facts. But he's doing it for the purpose of this appeal. He might contest them if he has to go back and have a trial. Well, I'm hoping he'll be consistent. He's not giving that up. I'm hoping that he would be consistent, That he would go back. Well, he doesn't have to. He just has to do it. He just has to give it up for purposes of our jurisdictional analysis. That's correct, Judge. But as I indicated earlier, All of the briefs, including the supplemental brief, All of them indicate that they want you, As Judge Norton said, to accept their facts, Their version of the facts. And now, of course, Mr. Furry, Who I respect greatly, Indicated that there is no dispute of the facts. And you can't necessarily have it both ways. You can't say... Well, you can for purposes of jurisdiction. For jurisdictional purposes, yes, sir. But I would ask the court, I think this is clearly a purely factual, Not purely factual, But more of a factual case. And it's not a purely legal matter, As Mr. Furry indicated. And as one of the judges, I can't recall whether it was Judge King or Judge Agee, But said that case law is relatively clear. That once you handcuff someone, You can't then continue to beat them up. Once they're compliant, You can't continue to beat them up. My grandmother used to say, You can't kick a man who's down. You lift that man up.  Where you're kicking a man that's down. You know, we have... In hockey and football, You're penalized if you hit someone who's defenseless. Well, there might be a situation Where somebody's handcuff is still resisting. That's right. They could be kicking, Still trying to resist the officer. I mean, the officer's entitled to act reasonably. He is. So, you know, Just because they got the cuffs on him Doesn't necessarily mean that Somebody's still not doing something to resist. Absolutely correct. And we don't have those facts here. We don't have any... In fact, he doesn't even say she continued to kick. Or that she continued to resist. He stood here and said he doesn't dispute The fact that she was compliant. But I think that this officer, From the very beginning, I thought was very... While he has the right to act reasonable, I don't think he acted reasonable From the very beginning, To be very honest with you. And one of the things you'll notice in the discovery, He was cursing at the people out there. What officer is going to go up there And you have a bunch of people there And he's cursing at them. I don't see that as being reasonable. And he admits that in his police report, That he cursed at them. And I would submit to the court That even prior to handcuffing her, And her being in compliance, That the officer acted unreasonable. I certainly understand his concern About the number of individuals that were out there. But I think his actions from the very, very beginning Were very unreasonable. And one of the witnesses that are going to testify for us, If it gets that far, If you guys dismiss the action or affirm it, Is another attorney who's going to testify. This officer typically is a very aggressive Law enforcement officer in Sampson County. More aggressive than most law enforcement officers. If Judge Fox allows that into evidence, It's going to be another attorney Who practices criminal law Who's going to testify to that. That he's a very aggressive law enforcement officer When he approaches people. And that he had the reputation That many of the attorneys would say He's likely to hurt someone. And in this situation, he did. He did that. And something else, judges. This lady that I represent, She's 110, maybe 120 pounds. You're going to have this officer Who's 220 pounds Beating up on this lady Who's 110 pounds. Not just before he handcuffed her, But after he handcuffed her. And so these are facts, Judge, That I would submit for the jury To make a determination. And I would respectfully disagree with Judge King. I don't think that he is a sympathetic defendant With his actions that day. I'm sorry. Any other questions? We appreciate it. Thank you, Judge. Thank you. Mr. Fury? Thank you, Your Honors. I do not have the district court record, So I'm not, and I don't have the briefs That were filed in the district court. With me here, to my knowledge, That was discussed in our office About that particular issue, But I can't represent it. You don't mention bifurcation stuff? Yeah, the questions that you asked me before To sit down and review, At this point, I would just take the position That in this instance, Judge Fox made his order. I think this court can do with that order, Including the requested, basically, The dichotomy as indicated in the Waterman case, Especially given the admission by the plaintiff In her own briefs in two different situations, Both on pages 11 of the principal brief And on pages 6 and 7 of the supplemental brief, Where she admits that the gravamen of her complaint Is not the pre-handcuffing injuries. And actually, with the supplemental brief, It starts at the bottom of page 6 And goes to the top of page 7. Ultimately, in this particular instance, Obviously, I think you raised the issue With regard to the damages. Obviously, I don't think the fact that she had bruises on her face Necessarily indicates when that occurred. Again, we're just specifically asking, in this instance, For summary judgment as to any conduct Prior to the handcuffing from this court And reversing it as to that extent. In this particular instance, Obviously, there were some things that I think were discussed Outside of the record during argument. I don't think that can be considered by this court As far as alleged facts that may be produced at trial. Because in this particular instance, They're not before this particular court And not in the record. Unless there are any additional questions, Again, we would ask for a reversal And a grant of summary judgment As to any conduct prior to the handcuffing And any injuries that occurred prior to that time, Including the finger from the... So you're not asking for any relief post-handcuffing? As I said, Your Honor, I think, given the cases that are out there And given the allegations that we have to take, it's true. Obviously, we're going to dispute those at trial, But ultimately, I think in that instance, As an officer of this court, I think that's what I need... I'm asking for, basically, pre-handcuffing. And the finger injury, which was clearly pre... Was pre-handcuffing in this particular instance. Very good, sir. All right. Thank you. Thank you very much. We'll come down in Greek Council and go to the next case. Is that all right?
judges: Robert B. King, G. Steven Agee, David C. Norton